IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NEREIDA RODRIGUEZ,<br><br>　　Plaintiff,<br><br>v.<br><br>UTAH COUNTY,<br><br>　　Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:21-cv-00049-JNP-JCB<br><br>District Judge Jill N. Parrish |

Defendant Utah County fired plaintiff Nereida Rodriguez from her position as a public health nurse. Rodriguez sued Utah County, asserting five claims: (1) discrimination based on race or national origin, (2) age discrimination, (3) failure to accommodate her disability under the Americans with Disabilities Act (ADA), (4) disability discrimination under the ADA, and (5) retaliation under the ADA. Before the court is defendant Utah County's motion for summary judgment on each of these claims. ECF No. 16.

The court GRANTS IN PART and DENIES IN PART the motion. The court grants summary judgment in favor of Utah County on the race or national origin discrimination claim, the age discrimination claim, and the retaliation claim. The court denies summary judgment on the failure to accommodate and disability discrimination claims.

# BACKGROUND[1]

Utah County hired Rodriguez in 2004 to the position of Public Health Nurse II. Nurses in this position provide community nursing services in public health clinics, schools, and private homes. When Rodriguez was hired, her primary assignment was to work in the Welcome Baby Program visiting new parents and infants in their homes. She also spent about ten percent of her time (one half-day shift every other week) working in the Women's Cancer Clinic. Rodriguez split her time between the Welcome Baby Program and the Women's Cancer Clinic for the next 11 years.

Rodriguez suffers from gastrointestinal flare-ups causing pain, bloating, nausea, vomiting, and difficulty swallowing. She also has a general anxiety disorder. Her anxiety can trigger her gastrointestinal symptoms and vice versa. Rodriguez's work conditions in the Women's Cancer Clinic were faster-paced and more stressful than her work conditions in the Welcome Baby Program. In October 2015, Rodriguez's supervisor released her from her duties at the Women's Cancer Clinic because of her health issues. Rodriguez continued to work with the Welcome Baby Program. The supervisor told her that the release was permanent. A few months later, the supervisor retired.

In October 2016, the director of the Nursing Division, Steve Mickelson, met with Rodriguez. Mickelson told Rodriguez that he intended to assign her to shifts at the Women's Cancer Clinic again. Rodriguez objected on two grounds. She stated that her former supervisor had permanently excused her from working in the clinic. Rodriguez also told Mickelson that her health problems made it difficult for her to work in the Women's Cancer Clinic. Mickelson

---

[1] The court recites the facts of the case in the light most favorable to Rodriguez.

indicated that he would not honor any promises made by Rodriguez's former supervisor. He also referred her to the Utah County Personnel Office to see if there was any reason that she should not be required to work in the Women's Cancer Clinic.

In January 2017, someone from the Utah County personnel office gave Rodriguez Family and Medical Leave Act (FMLA) paperwork and a letter to be delivered to her doctor. Rodriguez applied for intermittent FMLA leave to deal with gastrointestinal flare-ups. Her request was approved in February 2017. She used her intermittent FMLA leave to avoid her shifts at the Women's Cancer Clinic, where she had been scheduled to work one four-hour shift per week. Rodriguez's FMLA leave expired by early September 2017.

In July 2017, Rodriguez requested an accommodation under the ADA for her gastrointestinal and anxiety health issues. In September 2017, Rodriguez met with Utah County human resources employees to discuss a possible accommodation. She requested that she be excused from working in the Women's Cancer Clinic as an accommodation. One human resources employee told her that the county would not consider such an accommodation because working at the clinic was part of her job. In mid-September, Rodriguez met with a human resources employee, Cammie Taylor, at the Women's Cancer Clinic to discuss possible accommodations when she worked there. Taylor said that she had some ideas about accommodations to reduce Rodriguez's anxiety while she worked at the clinic and told Rodriguez that she had two hours to suggest any other accommodations to her work environment. Rodriguez requested additional time to consult her doctor about possible accommodations, but Taylor declined to extend the deadline stating that Rodriguez did not need to talk to her doctor about possible accommodations. Later that day, Rodriguez again requested an accommodation that allowed her to work in the Welcome Baby Program full time.

3

On October 2, 2017, Taylor provided a document to Rodriguez detailing the accommodations that Utah County was willing to offer, including extra breaks, additional training, and affording leave without pay for several shifts through October 3, 2017. The document also contained a "history" section that purported to detail the events leading up to the county's offered accommodations. Because parts of the history section were inaccurate or incomplete, Rodriguez declined Taylor's request that she sign the accommodation document. Two days later, Rodriguez emailed Taylor to request that she correct the inaccuracies found in the accommodation document. Taylor did not respond. On October 4, 2017, Rodriguez returned the accommodations memorandum, which indicated that she had accepted only the first two accommodations: (1) leave without pay for several shifts that she had missed and (2) extra breaks.

During October 2017, Rodriguez called in sick for all of her scheduled shifts in the Women's Cancer Clinic. On November 1 and November 6, Rodriguez met with a Utah County human resources employee Mark Brady. He told Rodriguez that the county was still willing to provide the accommodations listed in the October 2 accommodations memorandum, but that Rodriguez was required to start working her shifts in the Women's Cancer Clinic starting on November 7. Over the next two weeks Rodriguez called in sick seven times, including for all of her shifts in the Women's Cancer Clinic. On November 22, 2017, Utah County fired Rodriguez.

Rodriguez sued Utah County for: (1) unlawful discrimination based on race or national origin, (2) age discrimination, (3) failure to accommodate her disability, (4) disability discrimination, and (5) retaliation. Utah County moved for summary judgment on each of these claims.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

**I.    RACE, NATIONAL ORIGIN, AND AGE DISCRIMINATION CLAIMS**

Utah County moved for summary judgment on Rodriguez's claims for (1) race and national origin discrimination and (2) age discrimination. In her response brief, Rodriguez indicated that she did not oppose summary judgment on these claims. Accordingly, the court grants summary judgment in favor of Utah County on these causes of action.

**II.   ADA FAILURE TO ACCOMMODATE AND DISABILITY DISCRIMINATION CLAIMS**

Rodriguez asserts claims under the ADA for (1) a failure to accommodate her disability and (2) disability discrimination. An employee asserting a failure to accommodate claim must prove (1) that the employee was disabled, (2) that the employee was otherwise qualified to perform the essential functions of his or her job, (3) that the employee requested a plausibly reasonable accommodation, and (4) that the employer failed to provide a reasonable accommodation. *Aubrey*

*v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). To prove that an employer discriminated against a disabled employee by wrongfully terminating her, the employee must establish "(1) that [s]he is a disabled person within the meaning of the ADA; (2) that [s]he is qualified . . . to perform the essential functions of the job; and (3) that the employer terminated [her] because of [her] disability." *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir. 1995).

Utah County argues that it is entitled to summary judgment on the failure to accommodate and disability discrimination claims because Rodriguez cannot satisfy the second element of these causes of action: prove that she is qualified, with or without accommodation, to perform the essential functions of her job as a Public Health Nurse II. The county asserts that an essential function of this job is to work shifts in the Women's Cancer Clinic. Utah County further contends that Rodriguez either cannot perform this essential function with reasonable accommodations or refuses to do so. Rodriguez does not dispute that she cannot work shifts in the clinic. Instead, she argues that working shifts in the Women's Cancer Clinic is not an essential function of her job. Thus, Utah County's motion for summary judgment on these two claims turns on whether there is a dispute of material fact as to whether working shifts in the Women's Cancer Clinic is an essential function of the Public Health Nurse II position.

Under the ADA, "[t]he term essential functions means the fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1). The term "does not include the marginal functions of the position." *Id.* Some of the reasons that a job function may be deemed essential include, but are not limited to: (1) "the reason the position exists is to perform that function," (2) "the limited number of employees available among whom the performance of that job function can be distributed," and (3) the function is "highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular

6

function." 29 C.F.R. § 1630.2(n)(2). Evidence that a factfinder may consider when determining whether a particular function is essential includes:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3)

"Determining whether a particular function is essential is a factual inquiry." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003). In making this determination, "courts place 'considerable weight on an employer's judgment concerning a particular job's "essential" functions.'" *Kilcrease v. Domenico Transportation Co.*, 828 F.3d 1214, 1221–22 (10th Cir. 2016) (citation omitted). "But the employer's judgment is not conclusive evidence." *Adair v. City of Muskogee*, 823 F.3d 1297, 1308 (10th Cir. 2016) (citation omitted). Thus, "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Id.* (citation omitted). Nevertheless, "[b]ecause it is the employer's role to 'describe[ ] the job and functions required to perform that job,' [courts] 'will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity.'" *Kilcrease*, 828 F.3d at 1222 (citation omitted) (second alteration in original). "Once the employer has come forward with

7

evidence that a job function or requirement is essential, the plaintiff bears the burden to dispute that evidence or otherwise show that the function or requirement is nonessential." *Id.*

The position held by Rodriguez was Public Health Nurse II. Nurses in this job position may be assigned to a number of programs, including making home visits through the Welcome Baby Program, working in the School Nursing Program, working in immunization clinics or other community health clinics, and working in the Women's Cancer Clinic. A 2015 job description for the Public Health Nurse II position stated that part of a nurse's duties included performing community health service tasks assigned by the Nursing Director—i.e., Mickelson. Mickelson stated in an affidavit that "[w]hile all [Public Health Nurses] did not necessarily work at the Women's Cancer Clinic, they worked in the clinic to which they were assigned." He further declared that he decided to reassign Rodriguez to the Women's Cancer Clinic because she speaks Spanish and there was a need for Spanish-speaking nurses in the clinic.

In her deposition, Rodriguez confirmed that only a small percentage of the nurses working in the Welcome Baby Program—two out of 13–16 nurses—had been assigned to shifts in the Women's Cancer Clinic. Rodriguez further declared in an affidavit that not all nurses are required to work in more than one program and that two nurses who had previously worked in the Women's Cancer Clinic were transferred to the School Nursing Program and released from their assignments to work in the clinic.[2]

---

[2] Utah County objects to Rodriguez's testimony and statements in her declaration regarding the work assignments of her coworkers. The county argues that this evidence is inadmissible because "Ms. Rodriguez was not in management, and therefore she lacked personal knowledge to testify regarding the assignments of other nurses." But Utah County does not cite any authority for the proposition that an employee, as a matter of law, lacks personal knowledge of the work assignments of coworkers. Given that Rodriguez worked with the nurses who are the subject of her statements in her declaration, the court infers that she had personal knowledge of those facts.

Given the undisputed evidence that not all nurses who worked in the Public Health Nurse II position were required to work in the Women's Cancer Clinic, Utah County has failed to show that, as a matter of law, working shifts in the clinic is an essential function of the job. The job description does not mention the Women's Cancer Clinic. It only states that nurses must perform community health services as assigned by the Nursing Director. Moreover, Mickelson concedes that not all nurses are assigned to shifts in the Women's Cancer Clinic. Accordingly, Rodriguez could have satisfied the community health services job requirement by working in one of the other clinics provided by the county.[3] Because several nurses in Rodriguez's job position did not work

---

*See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (holding that an affiant's personal knowledge may be "reasonably inferred from [his or her] position[] and the nature of [his or her] participation in the matters [addressed in the affidavit]"). Moreover, because Rodriguez could have clarified the basis for her personal knowledge had the objection been raised, this objection to her deposition testimony was waived when Utah County failed to assert it during the deposition. *See* FED. R. CIV. P. 32(d)(3)(A) ("An objection to a deponent's competence—or to the competence, relevance, or materiality of testimony—is not waived by a failure to make the objection before or during the deposition, *unless the ground for it might have been corrected at that time*." (Emphasis added)); *Jordan v. Medley*, 711 F.2d 211, 218 (D.C. Cir. 1983) ("What the exception obviously envisions is a situation in which a timely objection (*e.g.,* on the ground of failure to lay an adequate foundation) could have enabled the problem to be remedied so that *the same testimony* could be received in accordance with law." (Citation omitted)); *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 505 F. Supp. 2d 1193, 1200 (D. Utah 2007) (same). The duty to object exists even if the party seeking to exclude the testimony is the party questioning the deponent. *See Kirschner v. Broadhead*, 671 F.2d 1034, 1038 (7th Cir. 1982) (a plaintiff waived his objection to a deponent's testimony even though the plaintiff was questioning the deponent). Accordingly, the court overrules Utah County's objection.

[3] The job description provided by Utah County does not specify what "Performs Community Health Services" means. But even if the job description were interpreted to mean that Rodriguez must provide community health services in the Women's Cancer Clinic, the county has not conclusively proven that working in this clinic was an essential job duty because many nurses did not work in the clinic. *See Kilcrease*, 828 F.3d at 1222 ("The question of whether a job requirement is a necessary requisite to employment initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement.").

in the clinic, Utah County has not shown the absence of any dispute of material fact as to whether working in the clinic was an essential function of her job.

In his affidavit, Mickelson states that although not all of the nurses in who work in the Public Health Nurse II position work in the Women's Cancer Clinic, all nurses are required to work in the clinic to which they are assigned. Thus, Utah County implicitly suggests that, while working in the cancer clinic is not an essential function per se, it was an essential function for Rodriguez because her supervisor chose to assign her to that that particular clinic. But a function may not be deemed essential as to a particular employee just because the employer says so. A function shared amongst a group of employees may be essential if there are a "limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2). But whether a function can be allocated to other employees generally may not be resolved on summary judgment. For example, where an employer had to select amongst 30 court clerks to choose four or five clerks to provide customer service at the front counter, whether working at the front counter was an essential function of the job position was a question for the jury. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 580 (4th Cir. 2015). Similarly, although exposure to heights was an essential function for a bridge maintenance crew, whether exposure to heights was an essential function for a particular employee could not be resolved on summary judgment where the evidence showed that a wide variety of tasks were split amongst the maintenance team and that not all team members had to work at heights. *Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011).

Here, it is undisputed that other nurses had no assignments to work in the Women's Cancer Clinic and potentially could have been assigned to work the shift assigned to Rodriguez. Indeed, it appears that Utah County was able to staff the clinic for at least a year while Rodriguez was

assigned to work exclusively in the Welcome Baby Program. *See Miller*, 643 F.3d at 197 (noting that an employee had successfully worked in his position for several years without working at heights and holding that the question of whether working at heights was an essential function should be left to the jury). Moreover, Rodriguez testified that other Spanish-speaking nurses had been excused from working in the Women's Cancer Clinic and presumably could have been assigned to work shifts in the clinic. Thus, disputes of material fact preclude the court from determining as a matter of law that working in the Women's Cancer Clinic was an essential function of Rodriguez's job position due to the limited number of employees that could be assigned to the task. *See Davidson*, 337 F.3d at 1191–92 (holding that disputes of material fact precluded summary judgment on the issue of whether a job function was essential). Accordingly, the court denies summary judgment on Rodriguez's failure to accommodate and disability discrimination claims.[4]

---

[4] In its reply brief, Utah County argues for the first time that it is entitled to summary judgment on the failure to accommodate and disability discrimination claims because the county has articulated legitimate, non-discriminatory reasons for denying Rodriguez's requested accommodation and for firing her. Because the county raised this argument in a reply brief, it has been waived. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[A] party waives issues and arguments raised for the first time in a reply brief."). Indeed, it would be particularly unfair to consider Utah County's untimely argument in the context of summary judgment because Rodriguez has not had an opportunity to respond to it by pointing to disputes of material fact or by citing evidence suggesting that the county's stated reasons were pretextual.

Even if the court were to consider this argument, Utah County would not prevail. The county primarily relies on a letter written by Rodriguez's doctor in response to an inquiry made by Utah County. The letter states that that the doctor believed that the accommodations offered in the October 2 memorandum would be sufficient to allow Rodriguez to "fulfill the functions being asked of her at work." But, as Rodriguez points out, the doctor stated that he was not able to talk to Rodriguez about Utah County's questions. Instead, he relies heavily on factual representations about Rodriguez's condition made in the October 2 memorandum in formulating his conclusions. Rodriguez asserts that those representations were inaccurate. Evidence that that the doctor's conclusion was based on faulty information calls into question the validity of the opinion. Moreover, the case that Utah County relies on, *Munson v. Shriners Hosps. for Child.*, No.

### III. ADA RETALIATION CLAIM

Rodriguez alleges that Utah County retaliated against her for requesting an accommodation for her disability by firing her. In order to prevail on her retaliation claim, Rodriguez must prove that Utah County terminated her employment because she requested an accommodation. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). Utah County argues that the court should grant summary judgment on the retaliation claim, citing evidence that it terminated Rodriguez for absenteeism, not because she requested an accommodation.

Because Utah County articulated a non-retaliatory reason for terminating Rodriguez, the burden shifts to her to cite evidence showing that the county's stated reason for firing her was pretextual. *See Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016). Rodriguez did not respond to Utah County's retaliation argument. Because Rodriguez shirked her duty to come forward with evidence of pretext, Utah County is entitled to summary judgment on the retaliation claim.

### CONCLUSION

For the reasons stated above, the court grants summary judgment in favor of Utah County on the race or national origin discrimination claim, the age discrimination claim, and the retaliation claim. The court denies summary judgment on the failure to accommodate and disability discrimination claims.

---

2:12-CV-00698-CW, 2014 WL 2880264, at *1 (D. Utah June 24, 2014), is not mandatory authority. The *Munson* ruling, which involved different facts, does not persuade the court that the doctor's letter at issue in this case conclusively establishes that the accommodations offered by Utah County were reasonable as a matter of law.

DATED February 28, 2023.

BY THE COURT

                                                 
Jill N. Parrish
United States District Court Judge